1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10                                 **EASTERN DIVISION**

11

12   CYNTHIA J. BAKER,                    )      No. ED CV 08-485-PLA
                                          )
13                      Plaintiff,        )
                                          )
14             v.                         )      **MEMORANDUM OPINION AND ORDER**
                                          )
15   MICHAEL J. ASTRUE,                   )
     COMMISSIONER OF SOCIAL               )
16   SECURITY ADMINISTRATION,             )
                                          )
17                      Defendant.        )
     _____)

18

19                                        **I.**

20                                  **PROCEEDINGS**

21          Plaintiff filed this action on April 17, 2008, seeking review of the Commissioner's denial of

22   her application for Disability Insurance Benefits.  The parties filed Consents to proceed before the

23   undersigned Magistrate Judge on April 30, 2008, and August 18, 2008.  The parties filed a Joint

24   Stipulation on December 22, 2008, that addresses their positions concerning the disputed issues

25   in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

26   /

27   /

28   /

## II.

## BACKGROUND

Plaintiff was born on July 31, 1957.  [Administrative Record ("AR") at 67.]  She has a high school education plus one year of college [AR at 118], and past relevant work experience as a hostess, a waitress, an office manager, and an animal control officer.  [AR at 32, 113, 120.]

On April 20, 2005, plaintiff protectively filed her application for Disability Insurance Benefits, alleging that she has been unable to work since August 3, 2004, due to rheumatoid arthritis and fibromyalgia.  [AR at 66-71, 112.]  After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 53-57, 59-64, 65.]  A hearing was held on March 28, 2007, at which plaintiff appeared with counsel and testified on her own behalf.  Testimony was also received from a vocational expert.  [AR at 267-85.]  On April 19, 2007, the ALJ determined that plaintiff was not disabled.  [AR at 26-33.]  Plaintiff requested review of the hearing decision.  [AR at 20.]  The Appeals Council denied plaintiff's request for review on March 7, 2008.  [AR at 5-8.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

1  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

2  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

3

4                                        **IV.**

5                    **THE EVALUATION OF DISABILITY**

6          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

7  to engage in any substantial gainful activity owing to a physical or mental impairment that is

8  expected to result in death or which has lasted or is expected to last for a continuous period of at

9  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

10

11  **A.     THE FIVE-STEP EVALUATION PROCESS**

12          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

13  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

14  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

15  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

16  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

17  substantial gainful activity, the second step requires the Commissioner to determine whether the

18  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

19  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

20  If the claimant has a "severe" impairment or combination of impairments, the third step requires

21  the Commissioner to determine whether the impairment or combination of impairments meets or

22  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

23  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

24  If the claimant's impairment or combination of impairments does not meet or equal an impairment

25  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

26  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

27  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to

28  perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a

1  prima facie case of disability is established.  The Commissioner then bears the burden of

2  establishing that the claimant is not disabled, because she can perform other substantial gainful

3  work available in the national economy.  The determination of this issue comprises the fifth and

4  final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

5  n.5; Drouin, 966 F.2d at 1257.

6

7  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

8          In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

9  gainful activity since the alleged onset date of the disability.[1]  [AR at 28.]  At step two, the ALJ

10 concluded that plaintiff has the "severe" impairments of rheumatoid arthritis, osteoarthritis, and

11 fibromyalgia.  [Id.]  At step three, the ALJ determined that plaintiff's impairments do not meet or

12 equal any of the impairments in the Listing.  [AR at 29.]  The ALJ further found that plaintiff retained

13 the residual functional capacity ("RFC")[2] to perform light exertional activity,[3] with occasional

14 climbing, balancing, stooping, kneeling, crouching, and crawling; frequent reaching, handling, and

15 fingering using bilateral hands; and a limitation to avoid concentrated exposure to extreme cold and

16 vibration.  [Id.]  At step four, the ALJ concluded that plaintiff was capable of performing her past

17 relevant work as a hostess, a waitress, and an office manager as they are generally performed.

18 [AR at 32.]  Accordingly, the ALJ determined that plaintiff is not disabled.  [AR at 32-33.]

19 /

20 /

21 /

22

23     [1]   The ALJ also determined that plaintiff met "the insured status requirements of the
24 Social Security Act through December 31, 2009." [AR at 28.]

25     [2]   RFC is what a claimant can still do despite existing exertional and nonexertional
   limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
27     [3]   Light work is defined as work involving "lifting no more than 20 pounds at a time with
   frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of
   walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg
28 controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) properly consider the treating physician's opinion regarding Sjögren's syndrome; (2) properly consider plaintiff's credibility; (3) properly consider the impact of plaintiff's obesity on her other impairments; (4) properly consider the State agency physician's opinion; (5) properly consider whether plaintiff met or equaled a Listing; (6) properly consider the actual physical and mental demands of plaintiff's past relevant work; (7) properly consider plaintiff's RFC; (8) properly develop the record regarding the treating physician's opinion with respect to Sjögren's syndrome; (9) pose a complete hypothetical question to the vocational expert; and (10) properly consider lay witness testimony. Joint Stipulation ("Joint Stip.") at 2-3.  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

## A.     TREATING PHYSICIAN'S OPINION/FAILURE TO DEVELOP RECORD

Plaintiff contends that the ALJ failed to properly consider the treating physician's opinion. Specifically, plaintiff asserts that the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of plaintiff's treating physician, Dr. Gilbert Putnoky, concerning plaintiff's diagnosis of possible Sjögren's syndrome.  Joint Stip. at 3-7.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).  Although the treating physician's

1    opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability.

2    See Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)).

3    "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's

4    physicians on the ultimate issue of disability, but he cannot reject them without presenting clear

5    and convincing reasons for doing so.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)

6    (quoting Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see

7    also Lester, 81 F.3d at 830. Where the treating physician's opinion on disability is controverted,

8    it can be rejected only with specific and legitimate reasons supported by substantial evidence in

9    the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring

10   that Social Security Administration "always give good reasons in [the] notice of determination or

11   decision for the weight [given to t..he] treating source's opinion"); Social Security Ruling[4] 96-2p

12   ("the notice of the determination or decision must contain specific reasons for the weight given to

13   the treating source's medical opinion, supported by the evidence in the case record, and must be

14   sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

15   the treating source's medical opinion and the reasons for that weight.").

16          Although the ALJ noted Dr. Putnoky's diagnosis of possible Sjögren's syndrome [AR at 31],[5]

17   he failed to provide specific and legitimate reasons for rejecting that diagnosis as set forth in Dr.

18   Putnoky's progress notes of June 9, 2005, and July 15, 2005.[6] [AR at 202, 234.] Because the

19   diagnosis of possible Sjögren's syndrome lends some support to plaintiff's testimony concerning

20

21          [4]   Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they

22   "constitute Social Security Administration interpretations of the statute it administers and of its
     own regulations," and are given deference "unless they are plainly erroneous or inconsistent with
     the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

23

24          [5]   Sjögren's syndrome is "a disorder in which the immune system attacks the body's
     moisture-producing glands, such as the tear glands and the saliva glands."
25   http://arthritis.webmd.com/tc/sjogrens-syndrome-topic-overview. "These glands may become
     scarred and damaged, and extreme dryness in the eyes and mouth (sicca syndrome) may
26   develop. Sjögren's syndrome may also cause fatigue, pain in the joints, and, in rare cases,
     problems with the function of vital organs, such as the lungs, kidneys, and nerves." Id.

27

28          [6]   The only severe impairments that the ALJ found are rheumatoid arthritis, osteoarthritis,
     and fibromyalgia. [AR at 28.]

6

her inability to work based on disabling pain,[7] and thus may have impacted the ALJ's severity determination and RFC assessment, the ALJ's failure to specifically reject Dr. Putnoky's diagnosis warrants remand.  Indeed, any inadequacies or ambiguities concerning Dr. Putnoky's diagnosis of possible Sjögren's syndrome should have triggered the ALJ's duty to seek further development of the record.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)  ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288).  If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available.  See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").  As a general rule, the record will be considered "inadequate" or "ambiguous" when a treating source has provided a medical opinion that is not supported by the evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden.  See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).  Here, the record was not sufficiently developed to permit the ALJ to properly consider and discount the opinion of plaintiff's treating physician concerning the existence of Sjögren's syndrome. It would have required little effort on his part to recontact the treating physician to determine the basis of the diagnosis.  The ALJ should do so on remand in order to resolve any inadequacies and fully develop the record.  See 20 C.F.R. §§ 404.1519a(b)(4),

---

[7]   Plaintiff testified that she has pain in her shoulders, hips, knees, hands, and feet. [AR at 276-77.]  She also testified that she experiences flare-ups of pain, as well as swelling in her shoulders, knees, hips, and hands, that can last for a week. [AR at 276, 278-79.]

416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).

## B.   PLAINTIFF'S CREDIBILITY

Plaintiff contends that the ALJ failed to properly consider plaintiff's testimony and failed to make proper credibility findings.  Joint Stip. at 7-9.  Specifically, plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting plaintiff's testimony.  Joint Stip. at 8-9.

Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility findings.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it).  The ALJ can reject a claimant's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there is medical evidence of an underlying impairment).  The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas, 278 F.3d at 958-59; see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  "It is not sufficient for the ALJ to make only general findings."  Dodrill, 12 F.3d at 918.  Absent evidence showing that the plaintiff is malingering, the ALJ must state which testimony is not credible and identify the evidence that undermines the claimant's complaints.  See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As the record contains no evidence of malingering by plaintiff,[8] the ALJ was required to justify his credibility determination with clear and convincing reasons. See Benton, 331 F.3d at 1040. In the decision, despite finding some of plaintiff's subjective allegations partially credible, the ALJ determined that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely credible." [AR at 31.] The ALJ discounted plaintiff's subjective complaints of pain because: (1) plaintiff's daily activities where not limited to the extent one would expect given plaintiff's complaints of disabling symptoms and limitations; (2) plaintiff's x-rays were essentially normal; (3) plaintiff received essentially routine and/or conservative treatment; and (4) plaintiff's treating physicians did not place any restrictions on plaintiff. [AR at 31-32.] As discussed below, the Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that they are neither clear nor convincing.

First, the ALJ determined that plaintiff's daily activities negated her allegations regarding her limitations. Generally speaking, if a claimant has the ability to perform activities "that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent [him] from working." See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Engaging in some household chores or activities, however, is not necessarily inconsistent with a finding of disability. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (benefits awarded on appeal to a claimant experiencing constant leg and back pain, despite the claimant's ability to cook and wash dishes); see also Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (stating that ability to assist with some household tasks was not determinative of disability) (citing Smith v. Califano, 637 F.2d 968, 971 (3rd Cir. 1981) (disability claimant need not "vegetate in a dark room excluded from all forms of human and social activity")). Here, in finding plaintiff's allegations regarding her limitations not totally credible, the ALJ cited plaintiff's testimony that "she drives occasionally, goes to the store with her husband, and goes for walks for 10 minutes each day." [AR at 31.] The fact that plaintiff drives occasionally, goes to the

---

[8] The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest plaintiff was doing so.

grocery store with the assistance of her husband, and has tried to walk for 10 minutes a day [AR at 275, 279-80], does not support the ALJ's decision that plaintiff could sustain gainful employment, as the ability to do these limited activities does not necessarily translate into an ability to do activities that are "transferable to a work setting." See Fair, 885 F.2d at 603 (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled and that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"); see also Smolen, 80 F.3d at 1284 n.7. The Court is not persuaded that plaintiff's ability to do the stated actions clearly undermines her subjective testimony. See Reddick, 157 F.3d at 722 (". . . claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Indeed, plaintiff testified that she sometimes does not feel comfortable driving and has trouble driving, she often has her husband take her to the store so that he can help her, and she has tried to walk for 10 minutes a day, but walking "just really set [her] back." [AR at 275, 279-80.] The ALJ made no findings that plaintiff is capable of performing these activities repeatedly or for substantial periods of time without rest, and did not explain how these activities are transferable to the workplace. See Fair, 885 F.2d at 603. Nor did the ALJ provide an explanation as to how plaintiff's ability to perform certain activities is inconsistent with her claimed limitations. See Reddick, 157 F.3d at 722 (an ability to take part in some household tasks bears on a claimant's credibility only to the extent that the level of activity is in fact inconsistent with the alleged limitations).

Next, the ALJ noted that plaintiff's "x-rays have essentially been within normal limits, showing only minimal findings." [AR at 32.] While the absence of objective medical evidence to support plaintiff's subjective complaints is a factor that an ALJ can consider in discrediting symptom testimony, it cannot be the sole factor. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added); see also Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support the severity of his pain . . . a finding that the claimant lacks credibility cannot be premised

1  wholly on a lack of medical support for the severity of his pain").  "Symptoms can sometimes

2  suggest a greater severity of impairment than is demonstrated by objective and medical findings

3  alone . . . [D]irect medical evidence of the cause and effect relationship between the impairment

4  and the degree of claimant's subjective complaints need not be produced . . . The absence of an

5  objective medical basis which supports the degree of severity of subjective complaints alleged is

6  just one factor to be considered in evaluating the credibility of the testimony and complaints."

7  Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948

8  (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S. Ct. 2885, 90 L.

9  Ed. 2d 974 (1986)).  Here, although plaintiff's x-rays showed essentially minimal findings  [AR at

10  191-94, 219], which lends some support to the ALJ's determination, the lack of objective medical

11  evidence to support plaintiff's subjective testimony cannot alone constitute a valid reason to

12  discredit her allegations.  See 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[S]tatements about

13  the intensity and persistence of [a claimant's] pain or other symptoms or about the effect [a

14  claimant's] symptoms have on [his or her] ability to work" will not be disregarded "solely because

15  the available objective medical evidence does not substantiate [a claimant's] statements."); see

16  also SSR 96-7p.  The ALJ has not provided any reasons that, coupled with the absence of

17  objective medical evidence, are clear and convincing.[9]

18      Furthermore, the ALJ found that "although [plaintiff] has received treatment for the allegedly

19  disabling impairment(s), that treatment has been essentially routine and/or conservative in nature."

20  [AR at 32.]  The ALJ's characterization of plaintiff's treatment is somewhat inaccurate.  Although

21  an ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's testimony

22  of disabling limitations or disabling pain (see Fair, 885 F.2d at 604), here, plaintiff's treatment was

23  more than conservative.  From 2003 through 2007, plaintiff was treated for, among other things,

24  rheumatoid arthritis, joint swelling and pain, abdominal pain, left shoulder tendinitis, possible

25  Sjögren's syndrome, fibromyalgia, osteoarthritis, bilateral hip bursitis, depression, and insomnia.

26

27  _____

28      [9]   As discussed herein, the other reasons that the ALJ provides in his decision for discounting
   plaintiff's subjective complaints are insufficient.

1   [AR at 154-77, 200-02, 204-07, 221-34, 246-48, 251-53, 261, 263.]   Over the course of her

2   treatment, plaintiff was prescribed, among other things, Lexapro, Darvocet, Protonix, Prednisone,

3   Flexeril, Methotrexate, Arava, and Enbrel.   [See id.]   Plaintiff was also treated with injection

4   therapy, which consisted of corticosteroid, Depo-Medrol and Kenalog injections, and was advised

5   to use a heating pad at home.   [AR at 202, 204-05, 221-22, 224-25, 228-29, 232.]   At the request

6   of Dr. William Spahn, x-rays of plaintiff's spine were taken, which revealed mild findings of

7   osteoarthritis of the thoracic spine, mild to moderate findings of the lower cervical spine, and

8   minimal degenerative disk disease at C5-6 with anterior osteophytes.   [AR at 192, 219.]   A left

9   shoulder arthrogram showed irregularity of the shoulder joint capsule, suggesting synovial

10   hypertrophy.   [AR at 194.]   On several occasions, Dr. Spahn noted that plaintiff's rheumatoid

11   arthritis and fibromyalgia were "severe," "quite bad," or "very bad."   [AR at 248, 251, 253.]   On

12   March 2, 2006, Dr. Putnoky noted that plaintiff "is increasingly disabled because of hand

13   problems," and gave her a corticosteroid injection.[10]   [AR at 230.]   Dr. Putnoky also noted that "[i]t

14   might be reasonable to discuss adding a different second-line agent . . . if [plaintiff] is not

15   significantly improved" at her next follow up appointment.   [AR at 230.]   On November 13, 2006,

16   Dr. Putnoky noted that plaintiff "has had a gradual return of more pain and slight swelling,

17   particularly in her hands."   [AR at 263.]   Dr. Putnoky found that "[t]here certainly has to be some

18   activity of [plaintiff's] rheumatoid arthritis for her to flare so badly off of prednisone and do so well

19   back on it," and predicted that "the Depo-Medrol injection is starting to wear off and [plaintiff] will

20   get worse again."   [Id.]   The record shows that plaintiff continuously sought treatment for her

21   conditions, underwent injection therapy, and took a variety of prescription medications.   There is

22   no indication in the record that plaintiff failed to follow any prescribed course of treatment.   Nor

23   does the ALJ in the decision indicate any alternative course of treatment plaintiff should have

24   received given her impairments, or offer any authority as to a more aggressive treatment regimen

25

26   _____

27   [10]   Although in earlier progress notes Dr. Putnoky indicated that he did not see anything
that was permanently disabling [AR at 207, 233], in this later progress note, he indicated that
28   plaintiff was "increasingly disabled."   [AR at 230.]

1    for an individual with plaintiff's impairments.  As such, the ALJ's rejection of plaintiff's treatment

2    as conservative was improper.

3          Lastly, the ALJ concluded that "a review of the record in this case reveals no restrictions

4    recommended by the treating doctor" to support plaintiff's allegations of disabling symptoms. [AR

5    at 32.]  This conclusion is not supported by the record.  To the extent that the ALJ relied on the

6    fact that Dr. Putnoky did not provide a functional assessment concerning plaintiff's restrictions,

7    such reliance is misplaced.  See Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to

8    develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the

9    testimony and reports").  On several occasions, Dr. Putnoky indicated that he does not perform

10   disability evaluations or examinations.  [AR at 206-07, 221-22.]  Given Dr. Putnoky's disclaimer,

11   it is not surprising that he did not place any restrictions on plaintiff.  Moreover, insofar as the ALJ

12   rejected plaintiff's subjective complaints of disabling symptoms based on the inadequacy of Dr.

13   Spahn's findings, such a rejection should have triggered the ALJ's duty to seek further

14   development of the record to determine whether Dr. Spahn found that plaintiff suffered from any

15   functional limitations.  See Tonapetyan, 242 F.3d at 1150; see also 20 C.F.R. §§ 404.1519a(b)(4),

16   416.919a(b)(4).

17         "While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot

18   affirm such a determination unless it is supported by specific findings and reasoning."  Robbins

19   v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006).  The ALJ erred by failing

20   to provide clear and convincing reasons for discounting plaintiff's subjective testimony.  Remand

21   is warranted on this issue.

22

23   **C.    LAY WITNESS STATEMENTS**

24         Plaintiff argues that the ALJ failed to consider the lay witness statements of plaintiff's

25   mother-in-law, Suzanna K. Baker.  Joint Stip. at 38-39.  Defendant argues that the ALJ's failure

26   to address Ms. Baker's statements was harmless error because her statements are "merely

27   cumulative of [p]laintiff's subjective complaints and are consistent with the ALJ's characterization

28

1  of [p]laintiff's testimony."  Joint Stip. at 39-40.  For the following reasons, the Court disagrees and

2  remands the case for further proceedings on this issue.

3        On May 13, 2005, Ms. Baker completed a Function Report Adult Third Party form

4  describing plaintiff's daily activities and abilities.  [AR at 128-36.]  Ms. Baker reported that she has

5  known plaintiff for 10 years and spends 10 to 12 hours each day with plaintiff.  [AR at 128.]  Ms.

6  Baker noted that plaintiff "gets up with pain," "is tired from being up a lot in [sic] night with pain,"

7  and "can't do much."  [AR at 128.]  She stated that "[s]ometimes [plaintiff] don't [sic] get dress[ed]

8  as she has a lot of pain."  [AR at 129.]  She reported that plaintiff's impairments affect her ability

9  to lift, squat, bend, stand, reach, walk, kneel, climb stairs, use her hands, and complete tasks.  [AR

10  at 133.]  In particular, Ms. Baker noted that plaintiff could not lift over 10 pounds and could walk

11  only 10 minutes before needing to rest.  [AR at 133.]

12        Judges may, "in addition to evidence from the acceptable medical sources . . . , also use

13  evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects

14  [his] ability to work."  20 C.F.R. §§ 404.1513(d), 416.1913(d).  Such other sources include

15  spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy.

16  See 20 C.F.R. §§ 404.1513(d)(4), 416.1913(d)(4).  Thus, lay witness testimony by family members

17  who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that

18  the ALJ must consider.  Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill,

19  12 F.3d at 919 ("An eyewitness can often tell whether someone is suffering or merely malingering.

20  While this is particularly true of witnesses who view the claimant on a daily basis, the testimony

21  of those who see the claimant less often still carries some weight.").  To reject lay testimony, an

22  ALJ must give reasons "germane to each witness" for doing so.  Dodrill, 12 F.3d at 919.  Failure

23  to consider lay testimony will be considered harmless error only if the reviewing court "can

24  confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

25  reached a different disability determination."  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050,

26  1053 (9th Cir. 2006).

27        Here, the ALJ failed to consider the lay witness statements of Ms. Baker.  In his decision,

28  the ALJ did not even mention the Function Report Adult Third Party form completed by Ms. Baker.

1    The ALJ's failure to consider the statements of Ms. Baker, who spent 10 to 12 hours with plaintiff

2    on a daily basis and has known plaintiff for an extended time period, was error.  See Dodrill, 12

3    F.3d at 919 ("Disregard of [lay witness statements] violates the Secretary's regulation that he will

4    consider observations by non-medical sources as to how an impairment affects a claimant's ability

5    to work. 20 C.F.R. § 404.1513(e) (2).") (quoting Sprague, 812 F.2d at 1232); see also Regennitter

6    v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999) (lay testimony

7    "provides an important source of information about a claimant's impairments, and an ALJ can

8    reject it only by giving specific reasons germane to each witness") (citing Smolen, 80 F.3d at

9    1298); Smith v. Heckler, 735 F.2d 312, 313 (8th Cir. 1984) (if an ALJ rejects the subjective

10   testimony of lay witnesses, he must specifically discuss the testimony and expressly make

11   credibility determinations); Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir. 1988) (testimony from

12   someone in a position to observe a claimant's symptoms and daily activities is "'competent

13   evidence.'") (citation omitted).

14         Regardless of whether Ms. Baker's statements mirrored the testimony of plaintiff, in order

15   for the ALJ to reject Ms. Baker's testimony, the ALJ must first acknowledge that Ms. Baker

16   completed the Function Report Adult Third Party and then state reasons discounting the

17   statements that are germane to Ms. Baker.  See Stout, 454 F.3d at 1053; see also Schow v.

18   Astrue, 272 Fed.Appx. 647, 653 (9th Cir. 2008) (ALJ failed to provide reasons for rejecting the lay

19   witnesses' observations that were "'germane to each witness'" by relying heavily on the adverse

20   credibility finding as to the claimant's testimony) (citation omitted); Michaels v. Massanari, 16

21   Fed.Appx. 751, 754-55 (9th Cir. 2001) (ALJ cannot properly discredit lay witness testimony solely

22   because the claimant lacks credibility); see, e.g., Turner v. Apfel, 1998 WL 289288, at *12 (N.D.

23   Cal. May 7, 1998) ("[t]he ALJ improperly rejected the lay witnesses' testimony because the ALJ

24   judged the lay witnesses' credibility by her determination of [the claimant's] credibility.").  The

25   Court finds that the ALJ's error was not harmless as it cannot conclude that no reasonable ALJ

26   would have found that plaintiff was disabled if it credited Ms. Baker's statements.  See Ellison v.

27   Astrue, 2008 WL 4425764, *5 (C.D. Cal. Sept. 29, 2008) ("'where the ALJ's error lies in a failure

28   to properly discuss competent lay testimony favorable to the [plaintiff], a reviewing court cannot

1  consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

2  crediting the testimony, could have reached a different disability determination.") (citing Stout, 454

3  F.3d at 1056).  Accordingly, remand is warranted on this issue.

4

5                                                        **VI.**

6                                  **REMAND FOR FURTHER PROCEEDINGS**

7           As a general rule, remand is warranted where additional administrative proceedings could

8  remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

9  Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).   In

10  this case, remand is appropriate to consider Dr. Putnoky's opinion, plaintiff's credibility, and Ms.

11  Baker's statement.[11]  The ALJ is instructed to take whatever further action is deemed appropriate

12  and consistent with this decision.

13          Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

14  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

15  for further proceedings consistent with this Memorandum Opinion.

16          **This Memorandum Opinion and Order is not intended for publication, nor is it**

17  **intended to be included or submitted to any online service such as Westlaw or Lexis.**

18

19

20  DATED: July 22, 2009                    _____

                                                          PAUL L. ABRAMS
                                                          UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26  _____
        [11]   As the ALJ's consideration on remand of the treating physician's opinion, plaintiff's
27  credibility, and the lay witness statements may impact the remaining issues raised by plaintiff
    in the Joint Stipulation, the Court will exercise its discretion not to address those issues at this
28  time.